In the

# United States Court of Appeals
## For the Seventh Circuit

No. 13-1734

TERRANCE HUFF and JON SEATON,

*Plaintiffs-Appellees*,

*v.*

MICHAEL REICHERT,

*Defendant-Appellant*.

Appeal from the United States District Court for the
Southern District of Illinois.
No. 12-596-MJR-PMF — **Michael J. Reagan**, *Judge*.

ARGUED FEBRUARY 19, 2014 — DECIDED MARCH 10, 2014

Before BAUER, FLAUM, and HAMILTON, *Circuit Judges*.

FLAUM, *Circuit Judge*. Officer Michael Reichert pulled over Terrance Huff and Jon Seaton on the interstate highway in Illinois. Reichert said their car had crossed the white divider line without signaling. After sixteen minutes, he gave Huff a written warning. However, Reichert continued to detain the pair for thirty-four more minutes, during which time he conducted a pat-down of both men, a dog sniff of their car's exterior, and a thorough search of their car's interior.

Huff and Seaton sued Reichert under 42 U.S.C. § 1983, alleging Fourth Amendment claims of unreasonable seizure, false arrest, and an unreasonable search of their persons and of Huff's car. The district court denied Reichert's motion for summary judgment based on qualified immunity. We affirm.

## I. Background

After attending a Star Trek convention in St. Louis, Missouri, plaintiffs were returning home to Hamilton, Ohio on Sunday, December 4, 2011. Huff was driving and Seaton was in the front passenger seat. The car had Ohio license plates. At 8:10 am, Reichert stopped them on Interstate 55-70 in Collinsville, Illinois. The entire traffic stop is captured on video on Reichert's dashboard camera. That video is in the record.

Reichert first asked Huff for his driver's license, insurance, and registration. Huff provided all three documents. When Reichert asked if the address on his license was current, Huff replied that it is actually his mother's address and then provided his current address in Hamilton, Ohio. Reichert said he was having trouble hearing Huff and asked Huff to exit his car and stand behind it while Seaton remained in the passenger seat. Reichert then asked Seaton about their travels. Next, Reichert explained to Huff why he had pulled him over, stating that Huff crossed halfway over the center line in front of a truck without using a turn signal and then moved back into his own lane. Huff replied that he had had problems with the lid on his drink. Reichert asked Huff about his criminal history, to which Huff replied that he had no outstanding warrants but had been arrested about twenty years earlier. Reichert then called police dispatch, which related that Huff had been arrested for battery with injury and for marijuana cultivation in 2001. Huff had no

convictions, though. Seaton had no criminal history. Reichert requested a backup officer, who later appeared on the scene. Reichert told Huff that he was letting him go with a warning. He gave Huff the warning and they shook hands. The encounter had lasted about sixteen minutes, at this point.

Reichert then requested to speak to Seaton. He said Seaton seemed nervous and apprehensive. Reichert mentioned to Huff that the interstate highway had been used by motorists to carry drugs, guns, and large amounts of U.S. currency. He asked if Huff possessed any of those items in his car, and Huff said no. Reichert then asked if Huff had any objection to Reichert's searching the vehicle; Huff replied that he would "just like to go on [his] way." Reichert said that he was concerned about Seaton's demeanor and wanted to walk his drug-sniffing dog around the car. Huff responded "that's fine," but then said, "[y]ou pulled me over for swerving, and I know I did not swerve." He also said that he believed he was being "profiled" by Reichert. Huff then asked Reichert if he was free to go. Reichert responded, "not in the car."

Reichert then asked Huff for consent to search the car, and Huff responded that he felt he had no choice but to consent. Reichert said he was merely going to have the dog sniff around the car to see if it would alert. Huff said that Reichert could use the dog but could not search the car. Next, Reichert conducted a pat-down search of Huff and Seaton. Reichert then brought the dog out and circled the car with it. When Reichert and the dog got to the front of the car, Reichert repeatedly said, "show me where it's at! Find it!" The dog then barked. Reichert immediately replied, repeatedly, "[t]hat's a good boy!" Reichert admitted in his deposition that he was trained not to say these types of things to his

dog during searches. Reichert told Huff that the dog alerted by scratching at the front of the vehicle and then barking. (This portion of the traffic stop is not visible on the video.)

Reichert then told Huff that he was going to search his car, and Huff responded, "do what you gotta do." Huff stated that, previously, a few individuals who smoke marijuana had ridden in his vehicle, but they had never smoked while in Huff's car. Reichert thoroughly searched the car. After the search, Reichert told Huff that there was marijuana "shake" in his car that needed to be vacuumed out. ("Shake" refers to the loose leaves, seeds, and stems at the bottom of a bag of marijuana.) However, Reichert did not document the presence of drugs in the car nor collect any physical evidence. About fifty minutes after the initial stop, and thirty-four minutes after giving Huff a warning ticket, Reichert told the plaintiffs that they were free to leave.

Plaintiffs filed this § 1983 suit against Reichert and the City of Collinsville,[1] with claims based on the Fourth Amendment and state law. Their federal claims against Reichert allege an unreasonable seizure, false arrest, unreasonable search of their persons, and unreasonable search of the car. Their state law claims are not relevant to this appeal. After some discovery, Reichert filed a motion for summary judgment based on qualified immunity, which the district court denied. It reasoned that a "raft of disputed material facts exists," and when viewing these facts in the light most favorable to the plaintiffs, they had made out clearly established violations of their rights. Reichert appeals.

---

[1] We granted the City's motion, pursuant to Federal Rule of Appellate Procedure 42(b), for dismissal from this appeal.

## II. Discussion

The doctrine of qualified immunity "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). In an interlocutory appeal from the district court's denial of qualified immunity at summary judgment, we have jurisdiction to consider "only the purely legal question of whether, for purposes of [the defendant's] qualified immunity defense," the facts asserted by the plaintiffs make out a violation of clearly established law. *Jewett v. Anders*, 521 F.3d 818, 819 (7th Cir. 2008). Thus, we accept the plaintiffs' (or the district court's) version of the facts and ask whether the defendant is nevertheless entitled to qualified immunity. *Id.* In addition, a defendant official "may not appeal a district court's summary judgment order insofar as that order determines whether or not the pretrial record sets forth a 'genuine' issue of material fact." *McKinney v. Duplain*, 463 F.3d 679, 686 (7th Cir. 2006) (quoting *Johnson v. Jones*, 515 U.S. 304, 319–20 (1995)). But summary judgment orders are appealable when they concern "an 'abstract issue of law' relating to qualified immunity," *id.* (quoting *Behrens v. Pelletier*, 516 U.S. 299, 313 (1996)), such as whether the right at issue is clearly established or whether the district court correctly decided a question of law, *Leaf v. Shelnutt*, 400 F.3d 1070, 1078 (7th Cir. 2005).

### A. Unreasonable seizure claim

The Fourth Amendment prohibits unreasonable searches and seizures. An officer's temporary detention of an individual during a traffic stop constitutes a seizure of a person,

*see Carmichael v. Village of Palatine*, 605 F.3d 451, 456 (7th Cir. 2010), and thus must be reasonable under the circumstances, *Whren v. United States,* 517 U.S. 806, 810 (1996). Officers "may conduct an investigatory stop of a person when they have a reasonable, articulable suspicion that criminal activity is afoot." *United States v. Riley*, 493 F.3d 803, 808 (7th Cir. 2007) (quoting *United States v. Lawshea*, 461 F.3d 857, 859 (7th Cir. 2006)). Reasonableness requires an objective inquiry into all of the circumstances known to the officer at the time that he detained the suspect. *United States v. Snow*, 656 F.3d 498, 500 (7th Cir. 2011). The Fourth Amendment permits pretextual traffic stops as long as they are based on an observed violation of a traffic law. *Whren*, 517 U.S. at 810. Thus, in order to stop the plaintiffs, Reichert must have had a reasonable articulable suspicion that they had committed, were committing, or were about to commit an offense. *See Riley*, 493 F.3d at 808. Changing lanes without signaling violates Illinois state traffic laws. *See* 625 ILCS 5/11-709(a); 625 ILCS 5/11-804.

But the district court found that there is "a genuine issue of material fact as to whether Reichert actually perceived a traffic violation."[2] If Reichert did not witness a traffic violation, then he lacked a reasonable basis to pull plaintiffs over; they were simply driving with out-of-state license plates on a particular stretch of highway where Reichert says that

---

[2] Reichert implicitly contends that the district court's conclusion was incorrect, arguing that "it is questionable whether Huff actually denied that his vehicle left his lane in front of a truck without a turn signal and then moved back into lane." But the district court found a disputed issue of material fact, and we cannot revisit that finding on interlocutory appeal even if we disagreed (which we do not). *See McKinney*, 463 F.3d at 690 ("[G]iven the mandate of *Johnson*, we lack jurisdiction to conduct such a review of the record.").

much drug trafficking occurs. These sorts of general statements do not amount to reasonable suspicion; if they did, officers could pull over scores of drivers every day without any particularized suspicion that the occupants of these cars had done anything unlawful. *See United States v. Marrocco*, 578 F.3d 627, 633 (7th Cir. 2009) (the "suspicion necessary to justify [a seizure] must amount to more than a mere hunch, and cannot be based solely on an officer's conclusion that a suspect fits a drug-courier profile. Instead, the suspicion justifying such conduct must be based on specific, articulable facts which, judged in light of the officers' experience, would justify the intrusion.") (citations and internal quotation marks omitted).

Reichert argues that the plaintiffs' version of the facts is merely "self-serving." Putting to one side that we have previously rejected this argument, *see Rooni v. Biser*, No. 13–1511, 2014 WL 407475, at *3 (7th Cir. Feb. 4, 2014) ("One acceptable type of evidence is the plaintiff's own affidavit, as long as it otherwise contains information that would be admissible if he were testifying directly. There is nothing suspect about the fact that such affidavits are normally 'self-serving.'" (citing *Hill v. Tangherlini*, 724 F.3d 965, 967 & n.1 (7th Cir. 2013); *Payne v. Pauley*, 337 F.3d 767, 773 (7th Cir. 2003)), we lack jurisdiction here even to consider it. *See Via v. LaGrand*, 469 F.3d 618, 622 (7th Cir. 2006); *McKinney*, 463 F.3d at 690. For the same reason, we may not consider Reichert's argument that the plaintiffs' accounts are "uncorroborated," for that is a contention about how to construe the factual record. *See LaGrand*, 469 F.3d at 625 & n.3 (noting that we may not review the factual record in an interlocutory appeal of a denial of qualified immunity, unless the district court fails to set forth the precise factual basis for its decision).

Finally, Reichert relies on three cases, but they are easily distinguishable. These cases involved (1) a "brief" stop and minimal intrusion, *see Johnson v. Crooks*, 326 F.3d 995, 998–99 (8th Cir. 2003), which the present case does not; (2) a credibility assessment, *see United States v. Dowthard*, 500 F.3d 567, 571 (7th Cir. 2007), which is irrelevant here; and (3) a case in which a motorist, who had been pulled over for crossing the centerline twice on a curve, told the officer that "he had just awakened, that he may not have been paying attention, and that he could understand how he may have gone left of center." *Valance v. Wisel*, 110 F.3d 1269, 1273 (7th Cir. 1997). The present case—in which the plaintiffs were lucid, their recollections clear, and the facts fiercely disputed—is a far cry from *Valance*. For the foregoing reasons, we affirm the denial of qualified immunity for an allegedly unlawful seizure.

## B.  False arrest claim

Plaintiffs' next claim is for false arrest, in violation of the Fourth Amendment. Reichert argues first that he did not arrest the plaintiffs, and second that even if he did, he had arguable probable cause to do so, which is "an absolute defense" to a wrongful arrest claim under § 1983. *Rooni*, 2014 WL 407475, at *3. We address each argument in turn.

### a.  Arrest

A traffic stop can be converted into a full-blown arrest if it extends beyond the time reasonably necessary to complete the purpose for which the stop was made. *Illinois v. Caballes*, 543 U.S. 405, 407 (2005) ("A seizure that is justified solely by the interest in issuing a warning ticket to the driver can become unlawful if it is prolonged beyond the time reasonably required to complete that mission."). "For an investigative

stop based on reasonable suspicion to pass constitutional muster, the investigation following it must be reasonably related in scope and duration to the circumstances that justified the stop in the first instance so that it is a minimal intrusion on the individual's Fourth Amendment interests." *United States v. Bullock*, 632 F.3d 1004, 1015 (7th Cir. 2011) (quoting *United States v. Robinson*, 30 F.3d 774, 784 (7th Cir. 1994)).

Applying these principles, Reichert's investigation following the initial stop violated the Fourth Amendment. He pulled over the plaintiffs for an alleged driving violation—and for only an alleged driving violation. Reichert's actions during the first sixteen minutes—in which he asked for Huff's license, registration, and insurance, and ensured that there were no outstanding warrants for either plaintiff—were consistent with Reichert's statement as to why he pulled over the plaintiffs. However, that limited investigation ended when Reichert handed Huff a written warning. At this point, Reichert had completed all of the steps attendant to investigating the purpose for the stop. Yet he reinitiated questioning on the grounds that Seaton seemed nervous. The investigation then continued for thirty-four more minutes. This portion of the stop was not reasonably related to the circumstances that initially justified the stop, nor did any other considerations justify prolonging the stop.

Nonetheless, Reichert maintains that plaintiffs were not under arrest because they were free to go. The Supreme Court has explained that, under these circumstances, "the appropriate inquiry is whether a reasonable person would feel free to decline the officers' requests or otherwise terminate the encounter. … [T]he crucial test is whether, taking into account all of the circumstances surrounding the en-

counter, the police conduct would 'have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business.'" *Florida v. Bostick*, 501 U.S. 429, 436–37 (1991) (quoting *Michigan v. Chesternut*, 486 U.S. 567, 569 (1988)); *see generally United States v. Tyler*, 512 F.3d 405, 409–10 (7th Cir. 2008).

After handing Huff the warning, Reichert requested to speak to Seaton and asked if Huff had any objection to Reichert's searching the car. Huff replied, "I'd just like to go on my way." Reichert told Huff that he was concerned about Seaton's demeanor and wanted to walk his drug-sniffing dog around the car. Shortly thereafter, Huff asked Reichert if he was free to go. Reichert responded, "not in the car." Reichert explained that the plaintiffs would be arrested if they walked away from the scene because it is illegal to walk on the highway. He said that they could, however, abandon their car, get in the back of a squad car, and have another officer take them to a gas station. If they chose that option, Reichert said, their car would be towed and impounded because it is illegal to abandon a car on the side of the highway.

We conclude that under these circumstances, no reasonable person would feel free to leave. The plaintiffs' car had been detained, and Reichert made it clear that they lacked the power to "terminate" the car search. *Bostick*, 501 U.S. at 436. They would be arrested if they walked away, so their only option was to leave in the back of a police car. And if they did that, their car would be towed and impounded, presumably at a considerable delay and expense to them. The result of leaving would be violating the law, losing both time and money, and briefly experiencing the back of a

squad car. That's really no choice at all. As a result, for the arrest to be lawful, Reichert needed arguable probable cause.

### b. Arguable probable cause

Probable cause exists when "the facts and circumstances within [the officer's] knowledge and of which they have reasonably trustworthy information are sufficient to warrant a prudent person in believing that the suspect had committed an offense." *Williams v. Rodriguez*, 509 F.3d 392, 398 (7th Cir. 2007) (citation and internal quotation marks omitted). The probable cause inquiry is an objective one; an officer's subjective motivations do not invalidate a search otherwise supported by probable cause. *Whren*, 517 U.S. at 812–13. The probable cause standard requires that the officer's belief be reasonable, not that it be correct. *Qian v. Kautz*, 168 F.3d 949, 953 (7th Cir. 1999). Due to qualified immunity's protection, an officer needs only "arguable" probable cause. *Humphrey v. Staszak*, 148 F.3d 719, 725 (7th Cir. 1998). Arguable probable cause exists when a reasonable officer "in the same circumstances and … possessing the same knowledge as the officer in question could have reasonably believed that probable cause existed in light of well-established law." *Id.* (citation omitted).

Reichert states that he had arguable probable cause because (1) Huff's driver's license did not have his current address; (2) Huff was carrying a temporary proof of insurance card; (3) Huff had two decade-old arrests, one for marijuana cultivation and the other for battery; (4) Seaton was nervous; and (5) the stretch of highway where Reichert stopped the car is used by motorists to carry drugs and guns.

These considerations did not provide arguable probable cause in this case. First, Huff's documents were both valid. *See* 625 ILCS 5/6-114 (explaining that if a driver's "residence address" changes, he *may* apply for a "corrected … license"); Ill. Admin. Code § 8010.20 (providing that a temporary insurance card is valid proof of insurance). Second, neither of Huff's prior arrests resulted in a conviction. A prior arrest (and especially one that does not result in a conviction) shows very little, if anything, about the likelihood that a person committed a crime a decade later. *See United States v. Walden*, 146 F.3d 487, 490 (7th Cir. 1998) ("Reasonable suspicion of criminal activity cannot be based solely on a person's prior criminal record."); *United States v. Jerez*, 108 F.3d 684, 693 (7th Cir. 1997) (same); *see also U.S. ex rel. DeNegris v. Menser*, 360 F.2d 199, 203 (2d Cir. 1966) ("At best, [a prior arrest] only implies that the police suspected them of [illegal] activity at that" earlier time); *Beck v. Ohio*, 379 U.S. 89, 97 (1964) ("We do not hold that the officer's knowledge of the petitioner's physical appearance and previous record was either inadmissible or entirely irrelevant upon the issue of probable cause. But to hold knowledge of either or both of these facts constituted probable cause would be to hold that anyone with a previous criminal record could be arrested at will.") (citation omitted). Third, the plaintiffs deny that Seaton was nervous, and we accept their account at this stage.[3]

---

[3] In any event, our court—along with the First, Fifth, Sixth, Eighth, Ninth, and Tenth Circuits—has held that nervousness is "of limited value in assessing reasonable suspicion" and/or is so common that it alone cannot justify a *Terry* stop. *United States v. Simpson*, 609 F.3d 1140, 1147 (10th Cir. 2010); *accord United States v. McKoy*, 428 F.3d 38, 40 (1st Cir. 2005) ("Nervousness is a common and entirely natural reaction to police presence … ."); *United States v. Richardson*, 385 F.3d 625, 630–31 (6th Cir.

Finally, probable cause cannot stem only from a suspect's presence in a high-crime area. Although "a high crime area" is a permissible consideration in considering the totality of the circumstances, *United States v. Jackson*, 300 F.3d 740, 746 (7th Cir. 2002), this consideration alone does not even support reasonable articulable suspicion. *Lawshea*, 461 F.3d at 860 ("[M]ere presence in a high-crime area does not … itself justify an investigatory stop."); *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000) (same). For the high-crime-area factor to carry weight in a probable cause determination, there should be "a reasonable connection between the neighborhood's higher crime rate and the facts relied upon to support probable cause." *Whitehead v. Bond*, 680 F.3d 919, 932 (7th Cir. 2012).

Under these circumstances, we do not see even arguable probable cause. Even if two arrests from a decade ago were moderately relevant, it is hard to see how those arrests in conjunction with driving through a high-crime area would lead a prudent, reasonable officer to conclude that Huff was

---

2004) ("[A]lthough nervousness has been considered in finding reasonable suspicion in conjunction with other factors, it is an unreliable indicator, especially in the context of a traffic stop. Many citizens become nervous during a traffic stop, even when they have nothing to hide or fear.") (citations omitted); *United States v. Portillo-Aguirre*, 311 F.3d 647, 656 n.49 (5th Cir. 2002) ("We have never held that nervousness alone is sufficient to create reasonable suspicion of criminal activity."); *United States v. Jones*, 269 F.3d 919, 929 (8th Cir. 2001) (suspect's nervous demeanor alone was not enough to establish reasonable suspicion); *United States v. Chavez–Valenzuela*, 268 F.3d 719, 726 (9th Cir. 2001) (holding that "extreme nervousness" during a traffic stop does not alone "support a reasonable suspicion of criminal activity, and does not justify an officer's continued detention of a suspect after he has satisfied the purpose of the stop."); *United States v. Brown*, 188 F.3d 860, 865 (7th Cir. 1999) ("Nervousness … alone will not justify a *Terry* stop and pat-down … .").

committing a crime. Therefore, Reichert is not entitled to qualified immunity on the plaintiffs' claims of false arrest.

## C. Unreasonable search of person claim

Plaintiffs next claim that Reichert unreasonably searched their persons. Reichert makes three arguments on this issue. First, he contends that both plaintiffs consented to his search of their persons. Second, he argues that the searches were incident to a lawful arrest. Third, he says he had reasonable articulable suspicion to pat them down, pointing to the same five considerations as in the prior issue. Each argument fails.

### a. Consent

In a prior § 1983 case, we evaluated whether a warrant-less search premised on consent was valid, and we said that the key consideration was whether "the consent was freely and voluntarily given—a factual question to be determined by the totality of the circumstances." *McGann v. Ne. Ill. Reg'l Commuter R.R. Corp.*, 8 F.3d 1174, 1178 (7th Cir. 1993); *see also Valance*, 110 F.3d at 1278. We later explained that if the initial seizure was unlawful, then contemporaneously granted consent is invalid, "unless it can be shown that the consent was in fact 'sufficiently an act of free will to purge the primary taint' of the unlawful seizure. The purported consent is free of the unlawful taint if there is a break in the causal connection between the illegality and the consent given." *McGann*, 8 F.3d at 1184 (quoting *Wong Sun v. United States*, 371 U.S. 471, 486 (1963)). Applying these principles, the *McGann* court reversed a grant of summary judgment. It reasoned that a factual question existed whether the plaintiffs voluntarily consented to the search even though they never indicated through words or actions that they opposed the search.

The present case is largely analogous to *McGann*, both in terms of the voluntariness question and the seizure issue. Reichert says plaintiffs consented to a search; plaintiffs deny as much. They contend that they were "exasperated and in-timidated" and thus "had no choice but to obey Reichert." If a jury believed plaintiffs, there would be a strong case for lack of voluntariness—especially under the circumstances of this case, where the plaintiffs were on the side of a highway, could not leave in their car, and would have been arrested if they walked away. Since these are factual questions that we cannot resolve here, we reject Reichert's consent argument.

### b. Search incident to a lawful arrest

Reichert's next argument is that if the plaintiffs were in-deed arrested, "then the search of their persons was lawful because it was incident to a lawful arrest." But the plaintiffs say the arrest was unlawful (their claim is *false* arrest), and in *Johnson v. United States*, 333 U.S. 10, 16 (1948), the Supreme Court "held invalid a search incident to an unlawful arrest where the arresting officer did not have probable cause prior to his entry into the room." *U.S. ex rel. Wright v. Woods*, 432 F.2d 1143, 1146 (7th Cir. 1970). In addition, the Court has ex-pressly rejected the practice of a warrantless "search incident to [a] citation" for a traffic violation. *Knowles v. Iowa*, 525 U.S. 113, 118–19 (1998). We therefore reject Reichert's argument.

### c. Reasonable articulable suspicion

Reichert next contends that he had reasonable articulable suspicion to do a pat-down search of the plaintiffs. In the context of a traffic stop, an officer may conduct a pat-down search when two conditions are met. "First, the investigatory stop must be lawful." *Arizona v. Johnson*, 555 U.S. 323, 326

(2009). This condition is satisfied when an officer "reasonably suspects that the person apprehended is committing or has committed a criminal offense." *Id.* Second, to proceed from a stop to a frisk, the officer "must harbor reasonable suspicion that the person subjected to the frisk is armed and dangerous." *Id.* at 327. Officers must have reasonable suspicion as to each person frisked. *Id.*; *see generally United States v. Brown*, 188 F.3d 860, 864 (7th Cir. 1999) ("Although the confrontation between a police officer and a citizen stopped for a traffic violation can be fraught with danger, this fact alone does not justify a pat-down, and the case law does not support the view that 'an officer may frisk the occupants of any car stopped for a traffic violation.'") (quoting *Pennsylvania v. Mimms*, 434 U.S. 106, 110 n.5 (1977)).

There was no reason to think that either plaintiff was armed or dangerous. We reach this conclusion for the same reasons that we determined that none of the five reasons Reichert proffers (individually or in combination) amounted to arguable probable cause. If there were a compelling need to pat down the plaintiffs, presumably Reichert would not have waited more than twenty-seven minutes to do so. Moreover, neither a prior conviction nor presence in a high-crime area is alone sufficient for reasonable articulable suspicion that a suspect is armed. *See Walden*, 146 F.3d at 490; *Lawshea*, 461 F.3d at 860; *United States v. Hairston*, 439 F. Supp. 515, 518 (N.D. Ill. 1977). Since there was no reason to suspect that either plaintiff was armed, we affirm the denial of qualified immunity for Reichert's search of their persons.

### D. Unreasonable search of vehicle claim

Plaintiffs also claim that Reichert unreasonably searched the car. The district court said, "Plaintiffs question many

facts surrounding the dog alert, such as: the accuracy of the dog; the training of the dog; the extent to which the dog was manipulated to respond; and whether an alert actually occurred at all." The district court denied summary judgment because it found that "there is a genuine issue of material fact regarding the reliability of the particular alert."

Reichert first argues that plaintiffs have waived this argument, but that is incorrect. We have found waiver where a "liberal reading of [the] complaint and argument in the district court yields no signs of the[] arguments [the plaintiff] is now presenting." *Fednav Int'l Ltd. v. Cont'l Ins. Co.*, 624 F.3d 834, 841 (7th Cir. 2010). Here, however, the arguments about the reliability and training of Reichert's dog were clearly before the district court and are encompassed by plaintiffs' allegations of a "false alert," which call into question the process by which the dog "knew" to bark.

Reichert next raises several factual arguments, quoting parts of the record at length. Yet we cannot consider arguments about the record given this case's procedural posture. *See LaGrand*, 469 F.3d at 622 ("Critically, and dispositively, this court lacks interlocutory jurisdiction to review the district court's conclusion whether genuine issues of material fact exist."). Reichert does not argue that, if we accept plaintiffs' account of the facts (at this stage), he nevertheless was justified in searching the vehicle. As such, we may not consider Reichert's arguments on this issue. *See id.*

### III. Conclusion

For the foregoing reasons, we AFFIRM the judgment of the district court.