In the

# United States Court of Appeals

## For the Seventh Circuit

No. 21-3245

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

RONALD COLBERT,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 1:18-cr-00395-TWP-DLP-2 — **Tanya Walton Pratt**, *Chief Judge.*

ARGUED SEPTEMBER 23, 2022 — DECIDED NOVEMBER 29, 2022

Before RIPPLE, ROVNER, and BRENNAN, *Circuit Judges.*

BRENNAN, *Circuit Judge.* During a traffic stop, a detective and a police officer worked in tandem to search Ronald Colbert's vehicle and frisk him, uncovering on his person a brick-shaped package later confirmed to contain a controlled substance. Colbert moved to suppress this evidence, arguing that the frisk violated his constitutional rights. The district court denied the motion, and Colbert entered a conditional guilty plea to possession with intent to distribute 40 grams or

more of a mixture containing a detectable amount of fentanyl in violation of 21 U.S.C. § 841(a). Colbert reserved his right to appeal the district court's ruling on his motion to suppress. Before us, Colbert contends that the district court erred in finding that the officers had reasonable suspicion to frisk him. For the following reasons, we affirm.

## I. Background

### A. Factual

On the evening of November 14, 2018, Detective Dirk Fentz of the Brownsburg, Indiana Police Department was on duty and patrolling the area of US Highway 36 and Ronald Reagan Parkway. He observed a gray Pontiac cross over the white line twice and fail to maintain its proper lane of travel. When the car failed to properly signal a lane change, Fentz activated his emergency lights. The driver took an uncommon amount of time to pull over, in Fentz's experience.

After the vehicle stopped, Fentz approached the passenger side and smelled the odor of marijuana as soon as he reached the window. He asked the driver, later identified as Colbert, to step back to the patrol car so Fentz could write him a warning for the traffic violations. Colbert had to be told to do so additional times before he complied and exited the vehicle. Once outside the Pontiac, Fentz observed Colbert appear to turn back toward his vehicle as if he intended to get back in. As Colbert walked to the patrol car, Fentz saw a bulge in Colbert's pant pocket.

Once in the patrol car, Fentz noticed that Colbert's chest was rapidly rising and falling in an exaggerated manner. Colbert began to talk and asked multiple questions, which was unusual in Fentz's experience. Because of Colbert's driving

and nervous behavior, Fentz asked Officer Chad Brandon, also of the Brownsburg Police Department, to assist, and Brandon arrived at the scene shortly thereafter.

While sitting next to Colbert, Fentz continued to smell the odor of marijuana (which was corroborated by Brandon when he arrived). When Fentz asked Colbert if there was anything illegal in his vehicle, Colbert responded there was not. Fentz filled out a consent to search form and asked Colbert to sign it. Colbert read and signed the form, giving Fentz permission to search his vehicle. After Brandon arrived, Fentz told Brandon he had not yet patted down Colbert and that Colbert had consented to a vehicle search. At that time, Fentz also knew that Colbert had a license to carry a firearm.

Fentz proceeded to search Colbert's vehicle, and Brandon patted down Colbert. During Fentz's search he heard Brandon call his name multiple times, requesting that Fentz come back to where Brandon and Colbert were standing. Brandon then handed Fentz a plastic, heat-sealed bag containing a white brick. Based on its packaging, and from his training and experience, Fentz concluded that the white brick was a controlled substance. The substance weighed 659 grams and was later identified as containing fentanyl.

According to Fentz, Brandon then told him how the frisk unfolded. Brandon had asked Colbert to step out of the patrol car so that he could pat Colbert down. Colbert complied, and Brandon felt the bulge in Colbert's pocket. Brandon asked if he could retrieve the object. Colbert consented, and Brandon retrieved approximately $400 in cash and a cell phone. Brandon continued to pat down Colbert's pants and felt a hard object, which Brandon thought was a firearm. When he asked Colbert what it was, Colbert began to reach for it. Then

Brandon pulled the object from Colbert's pants, revealing the white brick. Brandon proceeded to handcuff Colbert.

Fentz's contemporaneous search of Colbert's vehicle yielded a small amount of cash and another cell phone. In Fentz's experience, possessing these items was consistent with the sale and transport of narcotics.

**B. Procedural**

A grand jury indicted Colbert with possession with intent to distribute a mixture containing a detectable amount of fentanyl in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A). Colbert later moved to suppress the evidence obtained from the frisk, arguing that the search violated both the Fourth Amendment of the United States Constitution and Article 1, Section 11 of the Indiana Constitution.

The district court denied his motion.[1] That court explained that an evidentiary hearing on the motion was not necessary because Colbert had adopted the allegations in the criminal complaint and supporting affidavit of Drug Enforcement Agent (DEA) Kimberly C. Gaczkowski as well as Fentz's probable cause affidavit. The district court relied on numerous facts to conclude that Fentz developed a specific, articulable suspicion that Colbert was armed and dangerous:

- Fentz had been informed by DEA Task Force Officer Derek Heller that Colbert was seen leaving a suspected stash house.[2]

---

[1] The district court had jurisdiction under 18 U.S.C. § 3231.

[2] Any communication between Fentz and Heller does not appear in the affidavits, as the government acknowledges. Therefore, we do not consider this in resolving this appeal.

- Colbert did not pull over in a timely fashion after Fentz activated his police lights.

- Fentz smelled marijuana when he approached Colbert's vehicle and on Colbert's person when Colbert sat in the patrol car.

- Fentz had to ask Colbert several times to exit his vehicle before Colbert complied, and after exiting, Colbert hesitated and looked back at his vehicle.

- Fentz observed a bulge in Colbert's pant pocket when Colbert exited the vehicle.

- Colbert became nervous and started asking many questions while in the police vehicle.

- Fentz learned that Colbert had a concealed-carry permit when he processed Colbert's information.

The district court concluded that Fentz's consideration of those facts, given his years of police experience and work as a narcotics detective, provided reasonable suspicion that Colbert may be armed. Therefore, the search did not violate the Fourth Amendment.

Colbert later pleaded guilty to one count of possession with intent to distribute 40 grams or more of a mixture containing a detectable amount of fentanyl in violation of 21 U.S.C. § 841(a), reserving his right to appeal the district court's ruling on his motion to suppress. He was sentenced to sixty months' imprisonment and four years' supervised release. On appeal, Colbert challenges the denial of his motion to suppress.[3] He argues primarily that the frisk violated his

---

[3] This court has jurisdiction under 28 U.S.C. § 1291.

Fourth Amendment rights because the officers lacked a reasonable suspicion that he was armed and dangerous under *Terry v. Ohio*, 392 U.S. 1 (1968).[4]

## II. Discussion

### A. Legal Standard

This court reviews the district court's legal conclusions de novo and its factual findings for clear error. *United States v. Smith*, 32 F.4th 638, 641 (7th Cir. 2022). "To justify a patdown of the driver or a passenger during a traffic stop, … the police must harbor reasonable suspicion that the person subjected to the frisk is armed and dangerous." *Id.* at 642 (internal quotation marks omitted) (quoting *Arizona v. Johnson*, 555 U.S. 323, 327 (2009)). An officer does not have to be certain that the suspect is armed; rather, "the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *United States v. Patton*, 705 F.3d 734, 737–38 (7th Cir. 2013) (internal quotation marks omitted) (quoting *Terry*, 392 U.S. at 27). A frisk therefore must be justified in light of "the specific reasonable inferences which [an officer] is entitled to draw from the facts in light of his experience," as opposed to the officer's "inchoate and unparticularized suspicion or 'hunch.'" *Terry*, 392 U.S. at 27. A court looks to the "totality of circumstances confronting the officer" in determining whether there was reasonable suspicion for a frisk. *Patton*, 705 F.3d. at 738. With these standards in mind, we assess whether Fentz and

---

[4] Colbert also brings arguments based on the search-incident-to-arrest and inevitable-discovery doctrines. Because we resolve this case on reasonable-suspicion grounds, we do not address those additional contentions.

Brandon collectively[5] had reasonable suspicion to frisk Colbert during a traffic stop.

**B. Application**

Several factual circumstances during the traffic stop contributed to a reasonable suspicion that Colbert was armed and dangerous: the odor of marijuana on his person, his delay in stopping and exiting his car, his hesitant and nervous behavior, and the bulge in his pant pocket. We examine whether each of these facts may be considered as part of the totality of the circumstances giving rise to a reasonable suspicion.

### 1. Odor of Marijuana

*Waiver.* The district court concluded that the odor of marijuana contributed to reasonable suspicion to frisk Colbert. On appeal, Colbert argues he preserved this issue because at his plea hearing he contested that during the traffic stop there was an odor in his vehicle and on his person. The government responds that Colbert has waived any challenge by not contesting these facts during the suppression motion. Colbert replies that even if he did waive his arguments, they would still be subject to plain-error review on forfeiture grounds.

---

[5] Colbert does not contest that the collective knowledge doctrine applies to Fentz and Brandon. "When law enforcement officers are in communication regarding a suspect, … the knowledge of one officer can be imputed to the other officers under the collective knowledge doctrine." *United States v. Lyons*, 733 F.3d 777, 782 n.1 (7th Cir. 2013) (quoting *United States v. Lenoir*, 318 F.3d 725, 728 (7th Cir. 2003)).

Even if Colbert did dispute this point, the doctrine applies. In Fentz's probable cause affidavit he avers that he asked Brandon to assist with Colbert and informed him that Fentz had not yet patted Colbert down. Therefore, Fentz's knowledge can be imputed to Brandon.

The conditional plea agreement's language controls our analysis. Colbert did not reserve the right to challenge these factual findings, so we decline to address them. "Federal Rule of Criminal Procedure 11(a)(2) allows a defendant to enter a conditional guilty plea—that is, to reserve in his guilty plea the right to appeal 'the adverse determination of any specified pretrial motions.'" *United States v. Doherty*, 17 F.3d 1056, 1058 (7th Cir. 1994) (quoting *United States v. Markling*, 7 F.3d 1309, 1312 (7th Cir. 1993)). In determining which issues a defendant has reserved for appellate review, we noted in *United States v. Kingcade*, 562 F.3d 794, 797 (7th Cir. 2009), that "[w]ritten plea agreements are contracts, and we interpret them according to general principles of contract law." Therefore, "we look to extrinsic evidence of the parties' intentions—possibly found, for example, in a plea colloquy—only when the written contract is ambiguous." *Id.* This court can only "review issues clearly preserved in the written agreement, or, if that agreement is ambiguous, issues the parties clearly intended to preserve for appeal." *Id.* Where the plea agreement preserves the right to appeal an unfavorable determination on a specific motion, the defendant is limited to review of the motion "on the ground the motion had stated." *Doherty*, 17 F.3d at 1058. "All non-jurisdictional issues not specifically preserved in the conditional plea agreement are waived." *Kingcade*, 562 F.3d at 797.

Colbert's plea agreement did not preserve the issue of whether the officers smelled marijuana in his vehicle and on his person. His plea agreement states, "[T]he defendant expressly waives the defendant's right to appeal the conviction imposed in this case on any ground, including the right to appeal conferred by 18 U.S.C. § 3742, other than the Court's order denying the defendant's motion to suppress." Colbert therefore reserved his right to appeal the court's order

denying the suppression motion, and under *Doherty*, that right to appeal is limited to the grounds stated in that motion. In his brief in support of that motion, Colbert did not contest the factual allegations in the criminal complaint and affidavits, which included testimony that the officers smelled marijuana in Colbert's car and on his person. Accordingly, Colbert waived any objection to these factual findings. *See Doherty*, 17 F.3d at 1058.

At his plea hearing, Colbert did state that he sought to challenge the odor of marijuana in his vehicle on appeal. That testimony, however, constitutes extrinsic evidence that we decline to consider in light of the plain meaning of the plea agreement. *See Kingcade*, 562 F.3d at 797.

*Merits.* We next consider whether the district court erred in concluding that the odor of marijuana on Colbert's person and in his vehicle contributed to a reasonable suspicion that Colbert was armed and dangerous, justifying a *Terry* frisk. The government argues that the smell of marijuana gave officers greater reason to be concerned that Colbert would do something dangerous, citing *United States v. Patton*, 705 F.3d 734, 739 (7th Cir. 2013). Colbert responds that *Patton* involved alcohol intoxication and other factors, and that the government has not cited a case where the odor of marijuana was considered as an independent factor supporting reasonable suspicion.

In *Patton*, we held that officers had reasonable suspicion to frisk the defendant where there were recent reports of gun-related violence in the area, the stop occurred at night, a group of men had been drinking alcohol, and the defendant exhibited nervous and evasive behavior. *See* 705 F.3d at 738–40. We observed that the fact officers "had no way of knowing

how much alcohol" had been consumed contributed to a finding that the group of men might act unpredictably and dangerously. *Id.* at 739. We also cited the Eleventh Circuit's decision in *United States v. Knight*, 562 F.3d 1314, 1327 (11th Cir. 2009), where that court held that the smell of marijuana and alcohol on the driver of a vehicle contributed to a reasonable suspicion to frisk him. *Patton*, 705 F.3d at 739. Similarly, in *United States v. Brown*, 188 F.3d 860, 864–65 (7th Cir. 1999), we explained that the smell of marijuana in a vehicle "enhanced" the officer's belief that a defendant might be involved with drugs, which in turn was a factor in the reasonable suspicion analysis.

Colbert attempts to distinguish decisions involving alcohol intoxication but does not explain why marijuana should be treated differently in the reasonable-suspicion analysis. Like alcohol, marijuana is an intoxicating substance, and the odor of marijuana in a vehicle or on a suspect raises concern for officers that a defendant may act in an unpredictable and dangerous manner. The odor of marijuana was therefore properly considered by the district court as a factor supporting reasonable suspicion to frisk Colbert.

### 2. Evasive and Nervous Behavior

The district court also concluded that a number of Colbert's behaviors contributed to a reasonable suspicion that he was armed and dangerous. These included his delay in pulling over, that Fentz had to repeatedly tell Colbert to exit his vehicle before he complied, Colbert's hesitation once outside his vehicle, and his nervous behavior while in the patrol car.

These behaviors are properly considered in the reasonable-suspicion analysis.

*Delay in Pulling Over.* We agree with the government that Colbert's failure to promptly stop his vehicle supports reasonable suspicion for a frisk. In affirming the constitutionality of a frisk in *United States v. Fryer*, 974 F.2d 813, 817–19 (7th Cir. 1992), we observed that the defendant had not immediately pulled his vehicle over after the officers activated their emergency lights, and that the officers saw the defendant pass something to the passenger. This suggested that the occupants of the vehicle may have been trying to hide a weapon, a factor contributing to reasonable suspicion to search their vehicle. *See id.* at 817. In *Fryer*, we implicitly acknowledged that suspects might use the time it takes to pull the vehicle over to hide weapons, an inference we accepted in *United States v. Lyons*, 733 F.3d 777, 782 (7th Cir. 2013). In *Lyons*, we stated that officers could reasonably conclude that a suspect "accelerated his car in order to afford him time to transfer a firearm … before the police arrived." *Id.* We deemed it unnecessary for officers to observe any furtive movements by the driver to conclude that the time it takes to pull over might be used to conceal a weapon. *See id.* at 782–83 n.2.

Here, Colbert did not immediately pull over when Fentz activated his emergency lights. In Fentz's experience, it took an uncommon amount of time for Colbert to stop the vehicle, and that suggested to him that Colbert might be attempting to conceal something, such as a weapon. The delay in pulling over thus contributed to the officers' reasonable suspicion that Colbert was armed and dangerous.

*Delay in Leaving his Vehicle.* Colbert's reluctance to leave his car after Fentz ordered him to do so also contributed to

reasonable suspicion for the frisk. "[A] suspect's failure or refusal to comply with a police officer's order is … a factor that contributes to a reasonable suspicion that he may be dangerous." *Patton*, 705 F.3d at 739. Fentz testified that although he asked Colbert "if he would step back" to the patrol car so Fentz could write him a warning, "Colbert did not initially step out and had to be asked more times before he finally exited." Even after Colbert exited the vehicle, he "appeared to turn back towards his vehicle as if he was going to get back in the vehicle." This refusal to comply with Fentz's order is another factor in the totality of circumstances informing reasonable suspicion to frisk.

*Nervous Behavior.* Relying on *Huff v. Reichert*, 744 F.3d 999, 1007 n.3 (7th Cir. 2014), Colbert argues that his nervous behavior during the traffic stop is of limited value in assessing whether the officers had a reasonable suspicion to conduct a *Terry* frisk. Although in *Huff* this court stated that nervousness cannot alone justify a frisk, *id.*, it may contribute to reasonable suspicion because it is "frequently recognized as a sign that a suspect has something to hide, including a weapon." *Patton*, 705 F.3d at 740; *see also United States v. Ogelsby*, 597 F.3d 891, 894 (7th Cir. 2010); *United States v. Brown*, 188 F.3d 860, 865 (7th Cir. 1999). This is particularly true where "the manifestation and degree of [the defendant's] nervousness was unusual." *Patton*, 705 F.3d at 740.

Fentz testified that during the traffic stop Colbert was acting nervously and exhibiting "unusual behaviors." Specifically, Fentz noted that Colbert's chest was rising and falling in an exaggerated manner and that Colbert asked multiple questions during the interaction, which Fentz stated was not typical in his experience. "Because the reasonable suspicion

standard is an objective one, [Fentz's] subjective interpretation of [Colbert's] behavior does not control our own assessment of whether the circumstances confronting [Fentz] supported the pat-down." *Id*. But Fentz is an experienced officer, having served with the Brownsburg Police Department for thirteen years and as a narcotics detective for five years, and "the inferences that an experienced officer like [him] draws from an individual's behavior do inform our assessment of what a reasonable person in the [officer's] position would think about the likelihood that the suspect poses a danger to him." *Id.* Fentz's suspicion that Colbert's unusually nervous behavior meant he might be armed and dangerous is reasonable.

### 3. Bulge in the Pant Pocket

We turn next to Fentz's identification of a bulge in Colbert's pant pocket. We have previously acknowledged that a bulge in a suspect's clothing is a circumstance contributing to reasonable suspicion that he is armed and presently dangerous. *See United States v. Adair*, 925 F.3d 931, 937 (7th Cir. 2019); *cf. United States v. Richmond*, 924 F.3d 404, 411 (7th Cir. 2019) (bulge contributed to a reasonable suspicion that the suspect was illegally carrying a firearm). Colbert disputes that the bulge, in this context, can contribute to reasonable suspicion. He argues that Fentz's conduct belies that he believed Colbert was armed or dangerous based on the bulge in his pocket. Fentz—after noticing the bulge—still permitted Colbert to sit unrestrained in the patrol car while he discussed the issuance of a traffic warning and obtained consent to search Colbert's vehicle.

Yet, "the legitimacy of [a] search stem[s] at all times from whether a protective frisk for weapons was objectively

reasonable under the circumstances." *United States v. Barnett*, 505 F.3d 637, 640 (7th Cir. 2007). In *Barnett*, this court reversed the grant of a motion to suppress where the district court held that the officers did not subjectively believe the defendant was armed or that they were in danger while questioning the defendant. *Id.* at 639–40. We explained that the officers had an ongoing reasonable suspicion that the defendant had committed robbery, a crime that likely involved a weapon. *Id.* at 640. The questioning did not dispel the suspicion that the defendant was involved in that crime, and the defendant's nervousness during the questioning also "kept the suspicion of his involvement in a robbery alive." *Id.* This court additionally recognized, however, that excessive delay in performing a frisk might undermine its objective reasonableness. *Id.* at 641.

That Fentz asked Colbert to sit in his patrol car while he ran Colbert's information does not eliminate Fentz's reasonable suspicion that Colbert was armed. Objectively, an officer would have reasonable suspicion based on Colbert's delay in pulling over, reluctance to leave his vehicle, the smell of marijuana on his person and in his car, and the bulge in Colbert's pant pocket. Fentz also observed Colbert's chest rapidly rising and falling in an exaggerated manner, and Colbert began to ask Fentz multiple questions while in the patrol car. All these facts supported his suspicion that Colbert was armed and dangerous during that time. Nor must we accept Colbert's conclusion that Fentz did not subjectively believe Colbert was armed and dangerous. In fact, Fentz called Brandon for assistance because of Colbert's driving and nervous behaviors, which contradicts this conclusion. Brandon also arrived on scene shortly thereafter and performed the frisk. This is therefore not a case of excessive delay before a frisk that might undermine its objective reasonableness. *See id.* at 641.

Colbert further argues that if the bulge contributed to a reasonable suspicion justifying the frisk, that suspicion was dispelled when the frisk revealed that the bulge was a cell phone and cash. This court has previously concluded that the failure to find weapons after a frisk "did not erase the initial legitimate concerns" that the defendant might be dangerous and gain immediate control of weapons in a vehicle. *See United States v. Holifield*, 956 F.2d 665, 668 (7th Cir. 1992). We thus ruled that officers did not act unreasonably when they searched the defendant's car for weapons, rejecting the defendant's argument that the fact that neither he nor his passengers were carrying weapons on their person reduced the officers' reasonable belief that they were dangerous. *See id.*

The same logic applies here. The circumstances giving rise to Fentz's and Brandon's reasonable suspicion that Colbert was armed and dangerous went beyond the bulge itself: the combined circumstances of his refusal to immediately pull over, his reluctance to leave the vehicle when directed to do so, the odor of marijuana on his person, and his nervous behavior during questioning, all contributed the officers' reasonable suspicion. That the bulge was determined to be a cell phone and cash does not erase these other, legitimate concerns.

We also note that a frisk involves "a careful exploration of the outer surfaces of a person's clothing *all over his or her body* in an attempt to find weapons." *Terry*, 392 U.S. at 16 (emphasis added). An officer is not required to complete a pat-down of the defendant's entire body before investigating what any particular object on the defendant's person may be. Similarly, the investigation of any object before a search is completed does not eliminate the possibility that weapons are hidden

elsewhere. Brandon was thus not required to stop the frisk upon discovering that the bulge was a cell phone and cash.

Viewing the totality of the circumstances, the officers had a reasonable suspicion to conduct a *Terry* frisk. This conclusion is buttressed by our recent decision in *United States v. Radford*, 39 F.4th 377 (7th Cir. 2022), which presented similar facts. There, we decided that an officer had reasonable suspicion to frisk a defendant where the defendant was likely involved in the drug trade, acted nervously, and failed to comply with the officer's directives. *See id.* at 387. Colbert exhibited similar, unusually nervous behavior when he sat in the patrol car with Fentz. Moreover, Colbert was evasive in response to Fentz's directives, illustrated by his delay in pulling over and hesitation to leave his vehicle. Unlike in *Radford*, we do not consider Colbert's alleged departure from a stash house. Still, the odor of marijuana on Colbert and in his vehicle, along with the bulge in Colbert's pant pocket, further support reasonable suspicion that Colbert was armed and dangerous.[6]

Because Fentz and Brandon had a reasonable suspicion to support a *Terry* frisk under the totality of the circumstances,

---

[6] Colbert also argued that his license to carry a concealed handgun and his exit from a stash house cannot contribute to a finding of a reasonable suspicion to justify a *Terry* frisk. Colbert is correct that his concealed-carry license does not, by itself, justify a *Terry* frisk. *Cf. United States v. Leo*, 792 F.3d 742, 752 (7th Cir. 2015) (observing tension between state law permitting concealed carry and the officers' position that they were justified in conducting a full search of a defendant's backpack solely on the grounds that the defendant might have entered a preschool with a firearm). Because we hold that the officers had reasonable suspicion to conduct a *Terry* frisk in the absence of information about Colbert's exit from a stash house, we do not address this argument.

we AFFIRM the district court's order denying Colbert's motion to suppress.