In the

# United States Court of Appeals

## For the Seventh Circuit

No. 12-2905

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

ANTHONY M. LYONS,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Central District of Illinois.
No. 3:11-cr-30068-SEM-BGC-1 — **Sue E. Myerscough**, *Judge.*

ARGUED SEPTEMBER 18, 2013 — DECIDED OCTOBER 28, 2013

Before BAUER, POSNER, and TINDER, *Circuit Judges.*

TINDER, *Circuit Judge.* Anthony M. Lyons appeals his criminal conviction before the United States District Court for the Central District of Illinois for possession of a firearm as a felon, as well as his sentencing as an Armed Career Criminal under 18 U.S.C. § 924(e). As to the conviction, he challenges the district court's denial of his motion to suppress the firearm found during a traffic stop because, he alleges, the officers lacked reasonable suspicion to frisk him.

As to the sentence, he argues that the district court failed to state any reasons for imposing a sentence of 210 months' imprisonment, and that the district court improperly sentenced him to five years of supervised release under the erroneous assumption that such a period was mandatory, rather than left to the court's discretion. We affirm Lyons's conviction, but we remand the case for resentencing because the district court failed to state the reasons supporting its sentence, and because it incorrectly believed it was required to impose a five-year period of supervised release.

I.      BACKGROUND

A.  The Traffic Stop

On September 14, 2011, four Springfield police officers went on patrol in an unmarked squad car. At about 9:00 p.m., the officers spotted a blue Cadillac driven by James White. Lyons was in the passenger seat. One of the policemen, Officer Dodd, later testified that he recognized White from numerous previous encounters. Nine months earlier, he had attempted to pull White over for a traffic violation, whereupon White fled and crashed his car; officers found a firearm inside the vehicle. Five months after that first incident, Officer Dodd and a fellow officer attempted to execute a warrant for White's arrest while he was outside his apartment. Rather than complying, White fled inside and blocked the door. Upon forcing the door open, the officers discovered drug manufacturing material in plain view. They then secured a search warrant for the apartment and discovered two firearms and a significant amount of cocaine. Another officer riding in the unmarked police car on the night of September 14, Officer Burns, testified that, although he had nev-

er encountered White himself before that night, he was aware of White's two previous attempts to flee arrest.

Aside from these chases, Officer Dodd had pulled White over several times for traffic infractions, and he knew that his license had been suspended. The officers decided to stop White on suspicion of driving with a suspended license and activated the squad car's emergency lights. Instead of pulling over, White accelerated the car. According to the officers, he drove at least two blocks and ran a "solid" red light (one that was "near the end of its red cycle") before pulling his car to the curb.

At the time, Officers Dodd and Burns belonged to the police department's Street Crimes Unit, and both were veteran police officers, having served seven and six years, respectively. They later testified that, based on White's prior conduct and their own experience, they suspected White had fled in an attempt to conceal contraband, retrieve a weapon, or give himself a head start in a foot chase.

Once the vehicle came to a stop, Officers Dodd approached White and asked him to step out of the car. Another officer frisked White. Meanwhile, Officer Burns approached the passenger's seat and observed Lyons. He later testified that he noticed immediately that Lyons's hands were shaking and that he avoided eye contact when answering questions. Officer Burns then asked Lyons to step out of the car as well. He observed that Lyons's hands were still shaking as he exited the vehicle, but when he asked Lyons if he had any weapons, Lyons responded that he did not.

Officer Burns then announced that he intended to frisk Lyons for weapons. According to Officer Burns, Lyons hung

his head and said, "I have a gun on me." As Officer Burns proceeded to handcuff Lyons, Officer Dodd approached from the driver's side of the car and lifted up Lyons's shirt, revealing a loaded firearm in his waistband. Officer Dodd said that at this point he recognized Lyons as someone he had seen with White on "numerous occasions." The officers then placed him under arrest. Officers Dodd and Burns testified that the entire encounter, from the first observation of White's car to the subsequent arrest of Lyons, lasted about seventeen minutes.

Lyons was charged with possession of a firearm as a felon. On January 8, 2012, a magistrate judge recommended that the district court deny Lyons's motion to suppress the firearm. The judge advanced two grounds for the recommendation. First, he found that no search had occurred by the time Lyons admitted he possessed the firearm, and his statement provided ample reason for Officer Dodd to lift up Lyons's shirt. Alternatively, the magistrate judge determined that Officer Burns had reasonable, articulable suspicion that Lyons might be armed and dangerous, and therefore that the announced frisk was lawful, regardless of whether it began before Lyons made his statement. The district court agreed with the magistrate judge's second finding, and declined to reach the question of when the search began.

To support its decision, the district court found four factors triggered the officers' reasonable suspicion that Lyons illegally possessed a firearm or other dangerous items. First, Lyons appeared nervous when questioned. Second, Lyons was a passenger in a car driven by someone with a suspended license, who had just attempted to flee from the police. Third, the officers knew that White had attempted to flee

from police officers during a traffic stop within the past several months, and that police had found a firearm in White's possession after giving chase. Fourth, the officers knew that White had fled from officers in a separate incident near his apartment, in which firearms were also discovered.

The court noted that Lyons's association with White, a known criminal, reasonably contributed to the officers' suspicion. It observed that White could have posed a danger to the police, and that any passenger in the car with him may have presented a similar threat to officer safety. The court therefore concluded that "Officer Burns had a reasonable, articulable suspicion that [Lyons] … may have been armed and dangerous" and that the frisk was reasonable. *United States v. Lyons*, 856 F. Supp. 2d 946, 954 (C.D. Ill. 2012). The time between the beginning of the stop and the arrest—less than seventeen minutes, according to the officers' testimony—indicated to the court that their reasonable suspicion did not dissipate during the stop. Lyons was convicted following a one-day jury trial.

## B.      Sentencing

Lyons's Presentence Report ("PSR") indicated that he qualified as an Armed Career Criminal under 18 U.S.C. § 924(e) due to his prior commission of three serious drug offenses. The statute provides a mandatory minimum sentence of 15 years, and Lyons's federal sentencing guidelines range was 210-262 months' imprisonment. The PSR calculated his statutory supervised release term as "[n]ot more than 5 years," 18 U.S.C. § 3583(b)(1), and the guidelines range for his supervised release term spanned two to five years.

At sentencing, the district court ruled that Lyons was an Armed Career Criminal and adopted the proposed guidelines range. The government requested a sentence of 262 months' imprisonment, at the high end of the range. In response, Lyons's trial counsel argued for three alternative sentences. The first was a sentence of ten years' imprisonment, which fell below the mandated minimum provided under the Armed Career Criminal Act. The second was a sentence of fifteen years, the precise statutory minimum. The third was a sentence of 210 months, the minimum guidelines sentence recommended by the PSR.

The district court acknowledged that the guidelines were advisory and that it had considered both the guidelines and the sentencing factors set forth in 18 U.S.C. § 3553(a). The court also explained that it had reviewed the PSR, the sentencing commentary from both parties, and arguments made by counsel. It then sentenced Lyons to 210 months' imprisonment, as proposed in the alternative by Lyons. In a post-sentencing order, the district court considered Lyons's objections to the PSR, and then stated that:

> [A]fter considering the case file, relevant Guideline provisions, relevant statutory sentencing factors, arguments of counsel, and Defendant's statements at the sentencing hearing, this Court sentenced Defendant to 210 months of imprisonment. The Court found that the sentence was sufficient, but not greater than necessary. *See* U.S.C. § 3553(a).

*United States v. Lyons*, 3:11-cr-30068, slip op. at 16 (C.D. Ill. Aug. 24, 2012). The district court provided no explanation as to which factors in particular supported the sentence it im-

posed, or why this specific within-guidelines sentence was appropriate.

The PSR also calculated Lyons's statutory supervised release term to be "[n]ot more than 5 years." But during the sentencing hearing the court stated that Lyons "will still have to serve five years of mandatory supervised release." In its judgment, the court referred to the term as "5 years Mandatory Supervised Release," and in its Statement of Reasons, it checked the box indicating that the "mandatory minimum sentence was imposed."

## II.   DISCUSSION

### A.  The Suppression Motion

Lyons first challenges the denial of his motion to suppress the firearm as the product of an unreasonable frisk. We review a district court's legal judgment as to the constitutionality of a frisk *de novo*, and its factual findings for clear error. *United States v. Tinnie*, 629 F.3d 749, 751 (7th Cir. 2011).

Lyons does not dispute that officers had a reasonable basis to stop the car on the suspicion that White was driving without a license. *See Terry v. Ohio*, 392 U.S. 1, 27 (1968). Upon initiating a traffic stop, officers may "frisk the driver and any passengers upon reasonable suspicion that they may be armed and dangerous." *Tinnie*, 629 F.3d at 751 (7th Cir. 2011) (citing *Arizona v. Johnson*, 555 U.S. 323 (2009)). This suspicion must be particularized; there must be "reasonable belief or suspicion directed at the person to be frisked." *Ybarra v. Illinois*, 444 U.S. 85, 94 (1979). In *Ybarra*, the Supreme Court held that probable cause that a bartender of a tavern had committed a crime did not automatically generate reasonable, particularized suspicion toward individual patrons present dur-

ing the search. Lyons contends that the officers in this case likewise lacked particularized suspicion of him, as opposed to James White, the driver of the car.

This argument is unavailing. Officer Burns noted that Lyons appeared nervous, and that his hands were shaking. Although not conclusive, such observations may contribute to reasonable suspicion. "A display of nervousness is frequently recognized as a sign that a suspect has something to hide, including a weapon." *United States v. Patton*, 705 F.3d 734, 740 (7th Cir. 2013); *see United States v. Oglesby*, 597 F.3d 891, 894 (7th Cir. 2010). It is true, as Lyons points out, that Officer Burns conceded that such a nervous reaction was typical of traffic stops he had conducted throughout his career, but by this time it was apparent this was no ordinary traffic stop. The officers clearly had reasonable suspicion that White, who had been recently arrested with firearms at least twice and who had just attempted to flee through a red light, was armed and readily willing to put the safety of others at risk to avoid or delay an encounter with the police.[1] Lyons's decision to associate himself with White and ride in his car properly contributed to the officers' suspicion of him. *See United States v. Feliciano*, 45 F.3d 1070, 1074 (7th Cir. 1995)

---

[1] As already noted, Officer Burns testified that he was aware of White's past flight attempts. However, even if he were not, he could still rely on Officer Dodd's experience to support his decision to frisk Lyons. "When law enforcement officers are in communication regarding a suspect, … the knowledge of one officer can be imputed to the other officers under the collective knowledge doctrine." *United States v. Lenoir*, 318 F.3d 725, 728 (7th Cir. 2003).

(An individual's criminal association "is a permissible component of the articulable suspicion required for a *Terry* stop."); *United States v. Duguay*, 93 F.3d 346, 350 (7th Cir. 1996) (defendant's "nefarious associates" contributed to reasonable suspicion supporting a frisk); *United States v. Wheeler*, 800 F.2d 100, 103–04 (7th Cir. 1986), *overruled on other grounds by United States v. Sblendorio*, 830 F.2d 1382 (7th Cir. 1987). Finally, the officers could have reasonably concluded, based on White's behavior and their experience, that he accelerated his car in order to afford him time to transfer a firearm to Lyons before the police arrived.[2] Based on the totality of circumstances, it was therefore reasonable for the officers to suspect Lyons of being armed and dangerous.

The Supreme Court has held that police in certain circumstances may impute suspicion of a vehicle's driver to its passengers. For example, the police may order passengers out of a vehicle during a traffic stop, in part because "the motivation of a passenger to employ violence to prevent apprehension of such a crime is every bit as great as that of the driver." *Maryland v. Wilson*, 519 U.S. 408, 414 (1997). The Court has also held that police have probable cause to arrest a front-seat passenger of a car in which they found drugs. *Maryland v. Pringle*, 540 U.S. 366, 372–73 (2003). The Court noted that "'a car passenger—unlike the unwitting tavern patron in *Ybarra*—will often be engaged in a common enter-

---

[2] Lyons points out that the officers did not observe any furtive movements indicating that White did transfer a weapon, but obviously their observation of White's movement could have been obscured by his flight. The fact that the police did not witness a transfer does not dispel objective suspicion that White may have given Lyons a weapon.

prise with the driver, and have the same interest in concealing the fruits or the evidence of their wrongdoing.'" *Id.* at 373 (quoting *Wyoming v. Houghton*, 526 U.S. 295, 304–05 (1999)). In the case of James White, evidence of wrongdoing could easily have included possession of firearms, and his abortive flight from the officers gave him the opportunity to transfer any such weapons to Lyons. Under the circumstances, the police reasonably suspected both White and Lyons of carrying guns, and it would have been quite dangerous to frisk White alone and simply hope Lyons was unarmed.

Lyons resists this conclusion by pointing to our recent decision deeming a frisk unreasonable in *United States v. Williams*, No. 12-3864, 2013 WL 5314594 at *8 (7th Cir. Sept. 24, 2013). In that case, police responded to an anonymous 911 call regarding a group of men brandishing guns; when officers arrived at the scene a few minutes later, they found a (possibly different) group of eight to ten men standing in a parking lot, without any guns visible. The police then zeroed in on one of the men, Williams, and frisked him. Without delving too deeply into the facts and reasoning of that decision, we find it to be inapposite to the facts here. The panel in *Williams* explicitly distinguished that case from one in which the suspect "was part of a group that was openly violating the law." *Id.* at *9. In this case, by contrast, Lyons associated himself with a person who flagrantly and dangerously broke the traffic laws, in full view of the police. And officers in *Williams* made their stop during an investigation of an anonymous tip, not based on their previous first-hand en-

counters with the defendant's companion. [3] *Id.* at *1. Finally, *Williams* involved a stop of eight to ten individuals standing in a parking lot, a group significantly less likely to be acting in concert than two people travelling together in a car. *Williams* does not alter our conclusion that the frisk was lawful.

Because the officers had reasonable suspicion to frisk Lyons, we need not decide whether the frisk had in fact begun by the time Lyons admitted that he possessed a firearm. We accordingly affirm the district court's denial of Lyons's suppression motion and uphold his conviction.

### B. Sentencing

Although we affirm Lyons's conviction, we must remand for resentencing because the district court committed two procedural errors.[4] We review a sentence for procedural error *de novo*. *United States v. Annoreno*, 713 F.3d 352, 356 (7th Cir. 2013), *cert. denied*, 2013 WL 4080028 (Oct. 7, 2013) (No. 13-5775). In evaluating the sentence, we must "ensure that

---

[3] These facts also distinguish Lyons's situation from the other cases he uses to characterize the frisk as unreasonable. *See United States v. Wilson*, 506 F.3d 488, 494 (6th Cir. 2007) (driver and passenger pulled over for not wearing their seat belts); *United States v. Di Re*, 332 U.S. 581, 592–93 (1948) (driver and passenger frisked for counterfeit gasoline ration coupons); *Sibron v. New York*, 392 U.S. 40, 62–64 (1968) (defendant's discussions with narcotics addicts did not support protective frisk).

[4] In addition to the two issues discussed below, Lyons objects that the government was required to allege the nature and fact of his prior convictions in his indictment, and prove them beyond a reasonable doubt to a jury. But he concedes that his argument is foreclosed by *Alamendarez-Torres v. United States*, 523 U.S. 224 (1998). Therefore we do not disturb his sentence on this ground.

the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence." *Gall v. United States*, 552 U.S. 38, 51 (2007); *see also United States v. Jackson*, 547 F.3d 786, 792 (7th Cir. 2008). Because we find two procedural errors in Lyons's sentence, we vacate and remand for resentencing without reaching the question of whether the sentence was substantively reasonable.

### 1. Supervised release

The government concedes that the district court sentenced Lyons to five years of supervised release under the misapprehension that this was the statutorily prescribed minimum sentence. In fact, five years was the maximum term permitted under the statute. 18 U.S.C. § 3583(b)(1). Therefore, the sentence contains manifest procedural error and must be vacated. *See Gall*, 552 U.S. at 51. On remand, the district court shall impose a term of supervised release, not exceeding five years, based on its own reasoned judgment.

### 2. Failure to explain the sentence

At the outset, the government contends that Lyons failed to object to any deficiencies in the district court's explanation for the sentence it reached, and therefore that our review should be only for plain error. However, the district court never gave Lyons an opportunity to object until it had already imposed the sentence. And a defendant "is not required to except to rulings by the trial judge" once they are handed down. *United States v. Cunningham*, 429 F.3d 673,

679–80 (7th Cir. 2005). Although the court did substantively adopt what was essentially Lyons's second fallback proposal of 210 months' imprisonment, Lyons did not thereby forfeit his right to a procedurally valid sentencing, including an explanation for the term of imprisonment imposed. Accordingly, this court will review the district court's explanation for its sentence *de novo*.

"A sentencing court commits procedural error by not adequately explaining its choice of sentence." *United States v. Garcia-Oliveros*, 639 F.3d 380, 381 (7th Cir. 2011). The sentencing judge must, "at the time of sentencing, … state in open court the reasons for its imposition of the particular sentence." 18 U.S.C. § 3553(c). Section 3553(c)(1) further requires that, for a sentence with an advisory guidelines range exceeding 24 months, the judge must also state "the reason for imposing a sentence at a particular point within the range."

Both during the sentencing hearing and in its order, the district court simply acknowledged that it had considered the PSR, the guidelines, the § 3553(a) factors, and both sides' arguments, and then imposed sentence. We have held that "[a] rote statement that the judge considered all relevant factors will not always suffice" to meet the district court's statutory obligations. *Cunningham*, 429 F.3d at 679. The only elaboration on that "rote statement" the district court provided, in either the sentencing hearing or its order, was its remark that the "sentence was sufficient, but not greater than necessary." This partial boilerplate naturally raises the question of which particular goals the sentence achieved—"necessary" for what?—and why this precise sentence met those ends. The record gives no indication of how the district court weighed the various sentencing factors, or what facts sup-

ported the exercise of its discretion. The sentence is procedurally infirm.

To be sure, the district court is not required to recite and address each of the § 3553(a) sentencing factors, or all of a defendant's arguments for a lighter sentence. *See United States v. Rodriguez-Alvarez*, 425 F.3d 1041, 1047 (7th Cir. 2005); *Cunningham*, 429 F.3d at 679. And in general "cases in which we have remanded because of insufficient explanation of a sentence have usually involved a failure by the sentencing judge to respond to a principal, nonfrivolous argument in mitigation." *United States v. Salvanki*, 458 F. App'x 559, 562–63 (7th Cir. 2012); *see also Garcia-Oliveros*, 639 F.3d at 381–82 (7th Cir. 2011). We do not require that the district court expend its limited resources "belabor[ing] the obvious." *United States v. Gary*, 613 F.3d 706, 709 (7th Cir. 2010).

Here, the government argues that Lyons presented only frivolous arguments in favor of a sentence shorter than 210 months—first proposing an unlawful sentence below the statutory minimum, and then a sentence exactly at the statutory minimum. For the latter sentence, Lyons's trial counsel argued that, because mandatory minimums control over lower guidelines ranges, they should also trump higher guidelines ranges. Counsel added that the statutory minimum was Congress's considered sentence for "a similarly situated defendant to Mr. Lyons." The government points out that this argument, which relies on a failure to understand the term "minimum," is frivolous, and not the type of contention the district court must address. The government concludes that, without a viable argument for Lyons's two lower proposed sentences, the district court was justified in

picking the third, especially because it fell at the extreme lower limit of the guidelines range.

However, the government fails to appreciate that other below-guidelines sentences—lying above the statutory minimum—were available. And the district court's explanation for declining to impose such a lower term is not merely insufficient, but absent. A court may not arrive at a sentence simply by the process of eliminating the defendant's other proposals; the fact that Lyons suggested a 210-month sentence as one alternative does not relieve the district court of its obligation to explain its own reasons. Without this explanation, "meaningful appellate review" of the sentence's reasonableness is impossible. *Gall*, 552 U.S. at 50.

The government is correct that "[l]ess explanation is typically needed when a district court sentences within an advisory guidelines range." *United States v. Harris*, 567 F.3d 846, 854 (7th Cir. 2009). But a district court may not simply presume that a particular within-guidelines sentence is reasonable. *See Rita v. United States*, 551 U.S. 338, 351 (2007); *United States v. Ross*, 501 F.3d 851, 853 (7th Cir. 2007). It requires some independent justification. *See Cunningham*, 429 F.3d at 680 ("[I]nadequate explanation for the sentence precludes our affirmance" even of a guidelines sentence.). Instead, the record here reveals "complete silence" as to the district court's reasoning. *Garcia-Oliveros*, 639 F.3d at 382. In sum, "[t]he record before us is too thin to discern the considerations which motivated the district court's sentencing decision." *Id.* As the district court is considering Lyons's term of supervised release on remand, it should also provide a sufficient basis for whatever custodial sentence it decides to im-

pose. In remanding, we express no view as to what a substantively appropriate sentence might be in this case.

### III.    CONCLUSION

We AFFIRM the district court's denial of the motion to suppress. We VACATE the Appellant's sentence and remand for further proceedings consistent with this opinion.