COURT OF APPEALS
DECISION
DATED AND FILED

April 29, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2023AP950-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2020CF94

IN COURT OF APPEALS
DISTRICT III

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

RAYMOND GERALD MCCAFFERY,

DEFENDANT-APPELLANT.

APPEAL from a judgment of the circuit court for Sawyer County: ANGELINE E. WINTON, Judge. *Reversed and caused remanded with directions*.

Before Stark, P.J., Hruz, and Gill, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Raymond McCaffery appeals from a judgment of conviction for possession of methamphetamine. McCaffery argues that the circuit

court erred by denying his motion to suppress evidence found on his person following an officer's frisk of his body. We agree with McCaffery that the officer lacked reasonable suspicion to conduct the frisk, and we reverse the judgment of conviction and remand with directions for the court to grant his suppression motion.

## BACKGROUND

¶2 The State charged McCaffery with one count each of possession of methamphetamine and possession of drug paraphernalia after a traffic stop in which McCaffery was the passenger. McCaffery filed a motion to suppress, challenging the constitutionality of a frisk of his person during the traffic stop. The following background facts are undisputed and are taken from the evidence introduced at a suppression hearing and the circuit court's subsequent findings.

¶3 At around 11:00 p.m., Sergeant Ian Hall of the Sawyer County Sheriff's Department was traveling westbound on Highway 48 in his marked squad car when he observed a vehicle without license plate lamps pass by him in the opposite direction. Hall testified that he could not see into the vehicle because it was too dark outside. Hall further stated that he was on patrol by himself and that the closest police backup was "probably 20 minutes away or farther." When asked whether the area of the traffic stop was a "high[-]crime area," Hall testified that "[t]here's crime all over the county."

¶4 Hall turned his squad car around and obtained the vehicle's registration information. According to Hall, it "[a]ppeared" the vehicle was traveling "at a high rate of speed" as he was attempting to "catch[] up with" it. Hall believed that the driver of the vehicle was "attempting to take off or evade."

Hall then activated his emergency lights and sirens and "began to attempt to catch up." In doing so, Hall reached speeds of over 100 miles per hour.

¶5 Hall testified that as he was catching up to the vehicle, the driver stopped the vehicle in a residence's driveway. Hall stated that the driver drove approximately three miles prior to stopping his vehicle once Hall activated his lights and sirens.

¶6 After the vehicle stopped, the driver opened the driver's side door of the vehicle. Hall "shouted for the driver to remain in the vehicle," and the driver closed the door. Shortly thereafter, Hall determined that there were two people in the vehicle, and he ordered the driver to exit. Hall testified that when he ordered the driver out of the vehicle, the passenger—later identified as McCaffery—"stuck his hands out the window." Hall agreed that, based on his training and experience, when an individual puts his or her hands in the air, it "is a sign of cooperation" and that the individual is not holding a weapon.

¶7 Hall "detained" the driver "in handcuffs for safety," determined that James Schultz was the driver, and learned that he was driving while revoked. Schultz told Hall that he did not pull over immediately because he was "just having fun." Hall testified that because driving while revoked is an arrestable offense, he searched Schultz. Hall stated that he did not find anything of "evidentiary value" on Schultz and "had him stand in front of [Hall's] squad car."

¶8 Hall then then ordered McCaffery to exit the vehicle, and McCaffery complied. Hall stated that McCaffery was cooperative and kept his hands visible. McCaffery denied having weapons on him and stated that the only item he had on him was his glasses. Hall then placed McCaffery "by the rear" of his squad car and placed Schultz in the squad car.

¶9 Afterward, Hall "asked [McCaffery] again if he had any weapons on him" and "then patted him down for weapons."[1] While patting down McCaffery for weapons, Hall felt "something that didn't feel like glasses" in McCaffery's front sweatshirt pocket. McCaffery informed Hall that the object was "his stuff," and he then admitted to Hall that it was a methamphetamine pipe. Hall placed McCaffery under arrest and searched him, locating two methamphetamine pipes—one in McCaffery's front sweatshirt pocket within a soft glasses case—and a small bag of methamphetamine. At some point after initiating the traffic stop, Hall determined that McCaffery resided at the residence where the traffic stop had occurred.

¶10 Hall testified that the only personal information he had on McCaffery at the time he performed the frisk was limited to McCaffery's name and date of birth, which were both provided by McCaffery. Hall stated that he did not have, for example, any knowledge about warrants for McCaffery's arrest, his criminal history, or whether he was on probation.

¶11 Hall further testified that he did not feel threatened by McCaffery but that "[i]t was a very short time" from the start of the traffic stop "until [McCaffery] got out, and the unknown location and the residence, I didn't know

---

[1] As the circuit court noted in its decision on McCaffery's motion to suppress, there was a dispute surrounding whether Hall frisked McCaffery once or twice. The court did not resolve this factual dispute because it did not believe the issue was "determinative." Under these particular facts, we agree with the circuit court that resolving this factual dispute is not determinative to the constitutionality of the frisk that resulted in the search. The potential first frisk did not result in the finding of any evidence, and there is no suggestion that Hall frisked McCaffery a second time based on the potential first frisk. It is also worth noting that McCaffery does not argue that a first frisk dissipated any possible reasonable suspicion for a second frisk.

who lived at this residence, so I was still not going to take his word for it, that he didn't have any weapons on him."

¶12 McCaffery argued that Hall's frisk of his person was unconstitutional because Hall lacked the requisite reasonable suspicion that he presented a danger to Hall or others. McCaffery further argued that even if Hall had reasonable suspicion that McCaffery was armed and dangerous, Hall did not immediately recognize the object in McCaffery's front sweatshirt pocket as a methamphetamine pipe and, therefore, exceeded the scope of the frisk by seizing the pipe. Because the frisk and subsequent seizure of the pipe were unconstitutional, McCaffery argued, Hall lacked probable cause to arrest him and all evidence obtained as a result of the search incident to his arrest should be suppressed.

¶13 Ultimately, the circuit court denied McCaffery's motion to suppress. The court found that McCaffery did not behave in a fashion that contributed to reasonable suspicion for a frisk, for example, by exhibiting any "furtive movement." In fact, according to the court, by putting his hands out the window, McCaffery was showing that he was not holding or reaching for a weapon. Additionally, the court found that McCaffery remained cooperative during the traffic stop and was "submitting to the officer." The court also found that Schultz was "no longer a threat" when Hall frisked McCaffery because Schultz was inside Hall's squad car at that time.

¶14 Nonetheless, the circuit court determined that Hall had reasonable suspicion to believe that McCaffery was armed and dangerous when he frisked him. In reaching this conclusion, the court noted that the traffic stop occurred late at night, while it was dark outside, and in a rural part of the county with no backup

in the area. The court further cited the following facts: Hall could not see into the vehicle when it passed by him; the vehicle did not immediately stop when he turned his squad car around; when the vehicle did stop, Schultz attempted to exit; the vehicle stopped at an "unknown location"; and Hall did not know if there were other people in the residence where the vehicle stopped. The court also found that Hall immediately recognized the object in McCaffery's front sweatshirt pocket as a methamphetamine pipe. Thus, the court concluded that the search incident to McCaffery's arrest was constitutional.

¶15 McCaffery ultimately pled no contest to one count of possession of methamphetamine, and the remaining count was dismissed and read in. This appeal follows. *See* WIS. STAT. § 971.31(10) (2023-24).

## DISCUSSION

¶16 The Fourth Amendment to the United States Constitution provides, in relevant part, "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. CONST. amend. IV; *see also* **State v. VanBeek**, 2021 WI 51, ¶23, 397 Wis. 2d 311, 960 N.W.2d 32 ("The Wisconsin Constitution contains nearly identical protections, WIS. CONST. art. I, § 11, which we have interpreted consistent with its federal counterpart."). Whether a defendant's rights under the Fourth Amendment have been violated is a question of constitutional fact subject to a two-step standard of review. **State v. Houghton**, 2015 WI 79, ¶18, 364 Wis. 2d 234, 868 N.W.2d 143. First, we uphold the circuit court's findings of fact unless they are clearly erroneous. **Id.** We then independently apply constitutional principles to those facts. **Id.**

6

¶17    There is no dispute here that the initial seizure of McCaffery was constitutional or that Hall had the authority to lawfully order him out of the vehicle during the traffic stop.  *See State v. Floyd*, 2017 WI 78, ¶¶20, 24, 377 Wis. 2d 394, 898 N.W.2d 560.  Likewise, McCaffery does not argue that Hall impermissibly extended the duration of the traffic stop.  *See State v. Hogan*, 2015 WI 76, ¶35, 364 Wis. 2d 167, 868 N.W.2d 124.

¶18    Rather, McCaffery contends that the frisk of his person was unconstitutional because Hall lacked reasonable suspicion that McCaffery was armed and dangerous.  We agree.[2]

¶19    A police officer has "narrowly drawn authority" to conduct "a reasonable search for weapons for the protection of the police officer," where the officer has reasonable suspicion "to believe that he [or she] is dealing with an *armed and dangerous individual*, regardless of whether he [or she] has probable cause to arrest the individual for a crime."  *See Terry v. Ohio*, 392 U.S. 1, 27 (1968) (emphasis added); *State v. Kyles*, 2004 WI 15, ¶7, 269 Wis. 2d 1, 675 N.W.2d 449 (stating that an officer may perform a protective search for weapons if he or she has "reasonable suspicion that a person may be armed and dangerous to the officers or others"); *Arizona v. Johnson*, 555 U.S. 323, 327 (2009) ("To justify a patdown of the driver or a passenger during a traffic stop, … the police must harbor reasonable suspicion that the person subjected to the frisk is armed

---

[2] McCaffery argues, in the alternative, that even if Hall constitutionally conducted the frisk, suppression is still warranted because Hall did not immediately recognize the methamphetamine pipe as contraband.  Because we agree with McCaffery that the frisk was unconstitutional, and that the evidence located thereafter was a result of that frisk, we need not address whether Hall immediately recognized the contraband.  *See Turner v. Taylor*, 2003 WI App 256, ¶1 n.1, 268 Wis. 2d 628, 673 N.W.2d 716 (stating that we need not address alternative arguments when one is dispositive).

and dangerous."). The "armed and dangerous" standard refers to whether an individual "may be armed with a weapon and dangerous." *Kyles*, 269 Wis. 2d 1, ¶10.

¶20 Reasonable suspicion requires that an officer "be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant th[e] intrusion." *Terry*, 392 U.S. at 21. An officer's inchoate and unparticularized suspicion or hunch that an individual is armed and dangerous is insufficient to satisfy the protections afforded under the Fourth Amendment. *See id.* at 27. As such, the "reasonableness of a protective search for weapons is an objective standard." *Kyles*, 269 Wis. 2d 1, ¶10. The question is not whether the officer believed he or she and others may be in danger—"although this is a relevant consideration," *see State v. Nesbit*, 2017 WI App 58, ¶6, 378 Wis. 2d 65, 902 N.W.2d 266—but it is whether a reasonably prudent officer in the circumstances would be warranted in the belief that his or her safety and that of others was in danger "because the individual may be armed with a weapon and dangerous," *Kyles*, 269 Wis. 2d 1, ¶10.

¶21 We consider whether an officer had reasonable suspicion to perform a frisk under the totality of the circumstances. *See id.*, ¶72; *State v. Genous*, 2021 WI 50, ¶¶9, 12, 397 Wis. 2d 293, 961 N.W.2d 41 (rejecting a "divide-and-conquer" type reasonable suspicion analysis that focuses on isolated, independent facts rather than "the whole picture" (citation omitted)). "It is the State's burden to show the search complied with the constitution." *Nesbit*, 378 Wis. 2d 65, ¶6.

¶22 In *Kyles*, a police officer initiated a traffic stop of a vehicle that was driving at night without its headlights on. *Kyles*, 269 Wis. 2d 1, ¶11. The officer

"testified, in response to a question about the criminal activity in the area of the stop, that it was 'pretty active.'" *Id.*, ¶17. A second officer came to the scene of the stop. *Id.*, ¶12. At the request of one of the officers, the defendant—a passenger in the vehicle—exited to allow the police to perform a consensual search of the vehicle. *Id.*, ¶¶11-12. One of the officers testified that the defendant appeared nervous and was "kind of trying to keep his hands in" the pockets of his "big, down, fluffy" coat. *Id.*, ¶13.

> The officer directed the defendant to remove his hands from his pockets. As the defendant was walking, at the officer's request, to the rear of the car, the defendant again placed his hands in his pockets. Again the officer told the defendant to "keep [his] hands out of [his] pockets." Again the defendant complied and removed his hands from his pockets. The officer testified that the defendant's placement of his hands in his pocket was "like a nervous habit. He'd put them in, take them out, put them back in, take them out."

*Id.*, ¶14. That officer conducted a frisk of the defendant, locating marijuana. *Id.*, ¶15.

¶23 The officer testified that he "didn't feel any particular threat before searching" the defendant. *Id.*, ¶17. Approximately four to eight seconds elapsed from when the defendant exited the vehicle to when the officer conducted the frisk. *Id.* The circuit court suppressed the evidence located on the defendant after determining that the officer lacked reasonable suspicion to perform the frisk. *Id.*, ¶¶2, 19.

¶24 Our state supreme court affirmed. It concluded that "the officer could not, as a matter of law, have reasonably suspected that the defendant was armed and dangerous." *Id.*, ¶72. The court reached this conclusion after

considering the above-noted facts in their totality, including those favoring the State.

¶25    Namely, the court considered that the traffic stop occurred at night in an arguably high-crime area; the defendant was wearing an oversized coat and placed his hands in his pockets after an officer directed him to take them out; and the defendant's coat could have been used to "hide a weapon." *Id.*, ¶¶69-72. The court noted, however, that the traffic stop was initiated due to a traffic violation, not because the officer suspected a crime had occurred. *Id.*, ¶69. Moreover, the defendant followed the officer's order to exit the vehicle and walk toward the back of the vehicle. *Id.*, ¶70. Additionally, the officer described the defendant's action of putting his hands in his pockets as a "nervous habit," not as "threatening or menacing," and the defendant "apparently complied with the officer's request to take his hands out of his coat pockets and did keep his hands out of his pockets." *Id.*, ¶¶70-71. Lastly, the officer testified that he "didn't feel any particular threat before searching" the defendant. *Id.*, ¶¶17, 71. On these facts, the court concluded that the "officer's belief under the circumstances … that the defendant was armed and dangerous was more 'an inchoate and unparticularized suspicion or hunch.'" *Id.*, ¶72 (citation omitted).

¶26    Here, we consider the relevant facts known to Hall prior to his frisk of McCaffery under the totality of the circumstances. *See id.* In doing so, we note that the State seemingly agrees with the circuit court's finding that McCaffery "had done … nothing to contribute to the reasonableness of the frisk." Thus, any justification for the frisk must have arisen from circumstances not related to McCaffery's actions.

¶27 The traffic stop occurred at around 11:00 p.m. in a rural part of Sawyer County. *See **United States v. Garcia***, 751 F.3d 1139, 1145-46 (10th Cir. 2014) (concluding that a nighttime traffic stop in a sparsely traveled area added to the reasonableness of a frisk). McCaffery was the passenger in the vehicle, Schultz was the driver, and Hall was the only officer within twenty minutes of the stop. *See **United States v. White***, 593 F.3d 1199, 1203 (11th Cir. 2010) (reasoning that the fact that officers were outnumbered was a factor supporting the reasonableness of a frisk). Schultz did not immediately stop when Hall turned his squad car around and activated his lights and sirens, and Hall had to reach speeds of over 100 miles per hour in order to catch up to the vehicle. *See **United States v. Lyons***, 733 F.3d 777, 782 (7th Cir. 2013) (concluding that a driver's recent attempt to flee was a factor to consider when determining the constitutionality of a frisk of the passenger who had decided "to associate himself" with the driver); *but see **Ybarra v. Illinois***, 444 U.S. 85, 91 (1979) ("[A] person's mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause to search that person."); ***Arizona v. Primous***, 394 P.3d 646, 649-51 (Ariz. 2017) (concluding that the state's reliance on several factors for a frisk, including that the frisked individual was with someone who fled, was misplaced because the factors related to circumstances over which the frisked individual had no control).

¶28 Upon stopping, Schultz attempted to exit the vehicle until Hall directed him to stop. Hall then asked Schultz to exit the vehicle, at which point McCaffery "stuck his hands out the window." Hall viewed this act as "a sign of cooperation" and as McCaffery demonstrating that he was not holding a weapon. Hall placed handcuffs on Schultz and searched his person, not locating anything of "evidentiary value." Following Hall's instruction, McCaffery then exited the

vehicle. He denied having any weapons on his person. Shortly thereafter, Hall placed Schultz in the back of his squad car. Hall testified that he did not feel threatened by McCaffery. Hall then frisked McCaffery.

¶29 A reasonably prudent officer in Hall's situation would not have been warranted in believing that his or her safety was in danger because McCaffery was "armed with a weapon." *See Kyles*, 269 Wis. 2d 1, ¶10; *Terry*, 392 U.S. at 27. Given that there is no evidence in the record to suggest that McCaffery was placing his hands in his pockets, wearing oversized clothing suitable for concealing a weapon, or engaging in any other behaviors suggestive of weapon possession, the facts at hand weigh even less in the State's favor than those presented in *Kyles*.[3]

¶30 The State argues that Hall had "reason to believe that McCaffery— the only other person in the car—was involved in criminal activity and may be armed and dangerous." The State asserts that McCaffery "points to nothing suggesting that [Schultz] could not have been fleeing from [Hall] with McCaffery's acquiescence, or even at his urging." For example, the State contends that there is no evidence that "McCaffery was a hostage or a carjacking victim" or that Schultz did not flee "because McCaffery had a weapon." Moreover, the State argues that McCaffery and Schultz's outnumbering of Hall added to the reasonableness of Hall's decision to frisk McCaffery.

---

[3] Despite *State v. Kyles*, 2004 WI 15, 269 Wis. 2d 1, 675 N.W.2d 449, having clear factual similarities to this case, and despite the prominence of the case in McCaffery's brief-in-chief, the State made no effort to distinguish the circumstances in *Kyles* from those present here.

¶31 We disagree that McCaffery's mere presence in the vehicle with Schultz (along with the other factors noted above) rendered the frisk constitutional. We do not mean to suggest that a reasonably prudent officer can never frisk an individual, within the confines of the Fourth Amendment, based on another individual's actions. This general proposition, however, does not change the fact that for a frisk to be constitutionally permissible, it must be true that a police officer would reasonably "believe that he [or she] is dealing with an *armed and dangerous individual*." *See Terry*, 392 U.S. at 27 (emphasis added). In other words, a similarly situated, reasonably prudent police officer must have a reasonable basis to believe that the individual subject to the frisk "may be armed with a weapon and dangerous." *Kyles*, 269 Wis. 2d 1, ¶10. The standard is not simply that an officer has a general fear for his or her safety that is attenuated from the individual who is the subject of the frisk.

¶32 Here, the State presented no facts at the suppression hearing showing that a reasonably prudent police officer would have reason to believe that McCaffery was armed with a dangerous weapon prior to or during the traffic stop. McCaffery was cooperating fully with Hall and made no physical or verbal suggestions that he was armed. Although Schultz's behavior—speeding away from Hall for a brief period of time and attempting to exit the vehicle upon stopping—could be viewed as concerning to a reasonably prudent police officer, Hall placed Schultz in handcuffs and placed him in the back of his squad car *before* frisking McCaffery. This fact also dissipated any justification for the frisk based on the fact that Hall was outnumbered. Perhaps most importantly, nothing in the record supports a reasonable inference that Schultz was carrying a firearm or other weapon at any time related to the traffic stop, such that McCaffery could

have reasonably been considered to also possess a weapon. *See Ybarra*, 444 U.S. at 91; *Primous*, 394 P.3d at 649-51; *cf. Lyons*, 733 F.3d at 782.

¶33 Given the totality of the circumstances, Hall's "belief under the circumstances of this case that [McCaffery] was armed and dangerous was more 'an inchoate and unparticularized suspicion or hunch.'" *See Kyles*, 269 Wis. 2d 1, ¶72 (citation omitted). The State does not dispute that suppression of the evidence located on McCaffery's person is the appropriate remedy if the frisk was unconstitutional. *See Wong Sun v. United States*, 371 U.S. 471, 484 (1963). Thus, we reverse the judgment of conviction, and we remand with directions for the circuit court to grant McCaffery's motion to suppress.

*By the Court.*—Judgment reversed and cause remanded with directions.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5. (2023-24).